JAMES MAURY *v.* CAPTAIN WM. WATTS and OWNER OF STEAMSHIP TWEEDSIDE.

Where a ship was chartered, and by the terms of the charter party it was stipulated that the charterer should advance the expenses of the ship to a certain amount, and he consigns her to a person at the port from which the cargo is to be shipped, who makes these advances in his stead—*Held :* That if the consignee was cognizant of the terms and conditions of the charter party, in the absence of any express agreement to the contrary, he must be considered as having advanced funds for his principal, the charterer, and has no action for reimbursement against the ship owner or captain. *Held,* also : That although the captain had requested him to have his bill made out, and had stated that it would be paid by a party whom he named, yet this would give him no right of action against the captain.

An engagement to advance the expenses of a ship, under such circumstances, cannot be understood as giving the party advancing the right to instant payment where the advances are made, and as a consequence, the right to attach the ship.

APPEAL from the Sixth District Court of New Orleans, *Howell*, J.
*Benjamin, Bradford & Finney*, for plaintiff. *Singleton & Clack* and *McCay*, for defendants and appellants.

MERRICK, C. J. This suit was commenced by attachment to recover $2,108 59, advances made by the plaintiff to defray certain expenses incurred by the vessel at Galveston and in this port.

The amount of the disbursements made by the plaintiff appears to be admitted. The only question is, who is plaintiff's debtor, whether the ship owner, or the charterer ?

The ship was owned by *Thomas S. Begbie*, of London, and was chartered to *Rutson Maury, Jr.*, the brother of the plaintiff, in September, 1857, for a return cargo from Galveston or New Orleans to Liverpool. The cargo was to consist in cotton in square compressed bales. The charterer promised to pay nine-sixteenths of a penny per pound on the net landing weight on the quay at Liverpool, and to advance sufficient cash for ship's disbursements at New Orleans and Galveston, not exceeding £1000, ship paying four per cent. for commission and insurance.

The ship was consigned to plaintiff, who, having made the advances, claims reimbursement of the same of the captain and ship owner. He contends that there is nothing to indicate the nature of the relations which existed between *Rutson Maury, Jr.*, and the plaintiff. And as the captain called and requested the plaintiff to have his bill made out, and said a *Mr. Nivius* would pay it, that the captain and owner are responsible. That at all events, the master of the ship is bound, and cites 5 La. 335.

The testimony in regard to the relationship of *Rutson Maury, Jr.*, and his brother, the plaintiff, in regard to this transaction, appears to have been overlooked.

It is conceded, that the *charterer* consigned the ship to the plaintiff.  It is also proven by *Harding's* testimony.  On the 26th of November, 1857, the plaintiff, by letter dated New Orleans, and signed by him *as agent for the charterer*, directed the captain to take on board at Galveston 1000 barrels of flour and 5000 staves.  Again, when a protest was made by *Captain Watts* through the British Consul, because the plaintiff failed to furnish the amount of advances stipulated by the charter party, he gave for answer, in writing signed by himself, that, " owing to the derangement of mercantile affairs, *as well as certain clauses in the charter party of the steamship Tweedside*, he found it utterly impossible to negotiate the captain's draft on consignee in the usual manner."

It is thus quite clear, that he was aware of the clause in the charter party by which his brother had agreed to advance £1000 at Galveston and this city for the expenses of the ship.  As he was consignee of the charterer, and cognizant of the conditions and terms of the charter party, in the absence of any agreement to the contrary, it must be held that the plaintiff was advancing funds for his principal, and that too for the purpose of speeding the ship.  His principal had contracted to advance the expenses to the amount of £1000, and further to pay £30 demurrage for every day of detention in these ports exceeding twenty-five days.  After advancing a portion of the funds, the plaintiff was not at liberty to disregard his agency and make the general owner and the captain his debtors, and frustrate the very object of the voyage by attaching the ship.

The declaration of the captain, that *Nevius* would pay, gave the plaintiff no right of action against the captain.  For the latter had been acting under the directions of the plaintiff, as agent of their common principal, the charterer.  The captain had the right, after he had taken advice, to decline to direct *Nivius* to reimburse the plaintiff for the money he had advanced as the agent of his brother.

The engagement to advance the expenses of the ship in this port, cannot be understood as giving the party advancing the right to instant payment *here*, and as a consequence, the right to attach the ship.  These expenses were but a part of the wages of the ship paid in advance, and to be deducted when the voyage should be completed.  Under this view of the contract, the ship owner has already credited *Rutson Maury, Jr.*, with these advances.

The plaintiff neglected to provide the amount required by the charter party, and the captain was compelled to borrow money by a bottomry bond in order to be able to leave the port.

Under all the circumstances of this case, we are of the opinion that the plaintiff is not entitled to recover.  See Abbot on Shipping, 44, 45, and notes, ed. 1854 ; C. C. 2971, 2274.  See also *Hynson & Co.* v. *Wheeler*, ante p. 409.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be avoided and reversed ; and it is now ordered, adjudged and decreed, that there be judgment against plaintiff's demand, and in favor of the defendants, and that the plaintiff pay the costs of both courts.

LAND, J., absent.